DuBose. Okay, thank you. May I proceed, Your Honor? Yes, please. May it please the Court. I'm Michael DuBose. My co-counsel is Mr. Billy Gibbons. We represent the respondent, Neumann's Pharmacy LLC. Your Honor, this comes before the Court on a revocation of the Certificate of Registration issued by the DEA to Neumann's Pharmacy. The DEA revoked Neumann's Certificate based on core findings that it violated two federal regs, 21 CFR 1306.04a and .06. The DEA invented and then applied legal standards that have no statutory authority nor regulatory basis and are erroneous as a matter of law. Neither of these regulations address the so-called red flags or contain any mandate that red flags be documented in any manner or with any specificity. Specifically 1306.04a prohibits a pharmacist from knowingly filling an invalid prescription that is one that's not issued for a legitimate medical purpose or not issued by an individual practitioner acting in the usual course of professional practice or not issued in the usual course of professional treatment. 1306.06 that applies to the dispensing by pharmacist requires that the pharmacist only fill a prescription while acting in the usual course of professional practice. The DEA in this case did not even purport to find that the subject prescriptions were invalid or specifically that Neumann's knew that the prescriptions were invalid. Specifically in the ALJ opinion at page 31, the ALJ reports in this case the government did not allege that respondents dispensed prescriptions without actual, with actual knowledge that the prescriptions lacked a legitimate medical purpose. Instead the government alleged that respondents failed to fulfill its corresponding responsibility by filling prescriptions issued to four patients without resolving red flags of abuse and diversion. The decision in order when it evaluated the three patient cases, the third-party patient cases, merely found that respondents failure to resolve the red flags and document the resolution rendered the respondents dispensing outside the usual course of professional practice and in violation of the Louisiana standard of care. Is there a requirement that you document the resolution of the red flags? No, your honor, that's the selling point. There is no such requirement. The DEA has invented this requirement through the misinterpretation and misapplication of the two federal provisions I've just discussed and and the Louisiana regulations found in title 46 part 53 515a and 1123 181 and neither of those contain any requirement that the red flags be documented in any way. I have a question about one specific patient. Yes, your honor. J.H.R. Yes, your honor. The briefing by your honor said that this person received co-pays for non-controlled subscriptions during the same time period that I think it was a she was paying cash for controlled substances. That's correct. I have not looked at the record. Is that an accurate characterization? That's an accurate characterization, your honor, but the selling point is the co-pay was not insurance. The government's experts saw the phrase co-pay on the patient information sheet and presumed that it was insurance. Ms. Newman testified that the insurance was rejected. J.H.R. acknowledged she had lost her job and did not have insurance. The respondents expert, Dr. Akers, researched the co-pay, researched the card, and it was a discount card. It was not insurance. So there was no cash payment in lieu of insurance as the government alleges. It was merely a misassumption by the government's expert. Like a drug discount card that if you buy this drug you can get this percent off or something? That's my thing. Some companies will issue a discount card to patients unable to pay for their medication. It doesn't apply to all medications. So the discount card was merely utilized when it could be utilized and when it couldn't it wasn't. There was no use of cash to avoid insurance. So there was no red flag in that regard at all. And Dr. Ms. Newman rather testified that her insurance had been rejected and when questioned the patient, J.H.R. acknowledged she had lost her job and thus lost her insurance. Do we have to, if this is a you know a clearly erroneous sort of standard, do we take the adjudicator's take on it or are we allowed to say no the evidence actually doesn't show any of that? I believe you're actually right. I believe under the Loeber rights there's no difference required and there's no ambiguity to be resolved. This court can look at the statutes and rule that the statutes don't require the documentation department which is the only thing that the government's case hinges on. The government argued that it's ipso facto if you don't document it didn't happen and that the failure to document is automatically a violation of 1306.04a. Is it unlawful under Louisiana law to fill a prescription written by her father? It's not unlawful, your honor. That provision is an ethical provision that applies to physicians and it merely provides a provision. In certain instances it allows the physician to write the prescription for control of the family nurse but in most instances it's not. In this case with respect to that prescription, there was no dispute that there was a bona fide physician-patient relationship. There was no dispute that the prescription was issued for a legitimate medical purpose by a practitioner acting in the usual course of practice and there's no legitimate dispute that Laura Newman was unaware that that ethical provision had changed. There's likewise no dispute that she changed providers when she learned she was seen by specialists who continued the same medication regimen. So even if you argue that the ethical provision invalidates the prescription somehow which we contend it does not because it was a legitimate prescription issued in the usual course of practice, there's no indication that Laura Newman knew that and we offered as evidence that was again unrefuted. That prescription had been filled like 55 times by the pharmacy across town where she typically filled her prescriptions. She only filled it on a Saturday at her pharmacy when that pharmacy was closed. We're not shifting responsibility to the other pharmacy. We're saying that there was no alert to, hey you can't do this here which would have been similar but the fact that it had been filled didn't cause her any reason to think that it had somehow become unethical but it wasn't illegal. I guess this is similar to the question I asked earlier but could they just say we don't believe the doctor that she looked into any of these things. We don't believe her that she was nervous and she seemed not forthcoming and so none of what she said we believe If we were in a trial, it seems like they could do that. Can they do that here with this ALJ doing this? I guess if there's some basis, some legitimate basis other than ink on paper for a credibility determination but your honor, everything Laura Newman said was supported by the record. Everything she said was supported by the record. Look at patient CD for example. He had the non-opioid therapy first. Then he was put on the pain medication. It was issued by a neurosurgeon and the prescription came from a surgical hospital. That's all in the record. If you look at JNHR, there had been prior documentation of the same prescription for TMJ disorder that had been just a continuation of therapy, not a continuation of a prescription but it was the same drug regimen that she had been getting for many years. When you look at CE also, the diagnosis codes contained the script supported what Laura Newman testified to. He had a long standing history of surgical and shoulder issues and he had surgery by a neurosurgeon. In North Louisiana, we don't have many neurosurgeons. Laura Newman knew exactly who Dr. Cain was. He's a neurosurgeon at the Cain Medical Practice and he wrote the script. They said, well you don't know that there was surgery. Well it came from a surgical hospital. It came from a neurosurgeon. I think when you look at Laura Newman's testimony, I find that it's incredible. There has to be some basis other than just a mere phraseology and opinion. There has to be some basis that it's incredible. Everything she said was supported by the record. The same with SW. Her medication regimen had initially been prescribed by a specialty clinic in California. She suffered from long standing migraines and that was a continuation of that treatment. Even Dr. Graham and Abrams noted that there was no indication that the medication was being used other than as prescribed based on the field history. Going back to my point, this standard DEA formulator, if you look at 1306.04a, there's no requirement that the prescription, that the red flags be documented. The DEA has come up with this on its own. If you look at the DEA's ruling, in their brief, they always said, the Hays case has always required the knowing department, and no less than eight times Hays acknowledged that the knowingly element must be satisfied. In the Trinity 2 case in the Federal Register, the DEA has itself noted that to prove a violation of a pharmacist's corresponding responsibility, there must be the requisite degree of scientra, i.e. that the pharmacist knowingly filled an invalid prescription. That's Trinity 2 that was cited in our brief. That's a significant departure from where they are now. Now they're saying that if there's a red flag, which by the way, is not defined anywhere. I mean, their effort is any little thing that would give rise to some question that the prescription may or may not be valid. There was no real definition of what constitutes a red flag. But there's no support in the statutory scheme for the documentation. They go to section 515A of the Louisiana Register that has the drug utilization review that lists seven scenarios. And it requires that the pharmacist exercise professional judgment and take appropriate action. That specific statute that requires a second look at these things does not require documentation. So what do they do? They leapfrog to section 1123 L1A, which has five specific Roman numeral data points, specific information that should be, it says should be documented. None of those address section 515A. Roman numeral 5 has four additional specific data points that they require to be documented. So there's nine specific data points in L1A that they rely on to say creates this documentation requirement in 515. Well, none of them say that. None of them reference 515. None of them reference any of the scenarios in 515. Then they go to the catch-all of L1A and say, well, that's the one that requires it. But it doesn't mention that at all. Mr. DeVos, can we talk about, assuming you win, what relief would you get? Would you get back at your, with remand? What would be the, or are you, it seems that you are asking for it without remand, but I'm not sure what the basis of that is. We believe that there's no scenario that the DA can conjure under the framework of its decision to support the revocation that vacature would be appropriate without remand. But if you look at... But shouldn't, is there a case that you would cite to us that it would be, that we would depart from the APA's default remedy, which would be vacature with remand? None of them may have been cited in brief, Your Honor. Okay, so you're just saying you think it's a home run and they can't go back and do anything and we should just put a stake in this, but you're not having real authority for that proposition, but you think this case cries out for that? Yes, Your Honor. Okay, I got it. Can you ask, I do have a follow-up question. If Newman's Pharmacy lost its certificate, it seems that it still wouldn't have a valid certificate. Can you get any relief from this case in that way? Because it would still not have a valid certificate, would it? What relief can you get? Well, the relief would be that, I guess the court, to your point, would order the DA to reinstate the certificate because there was no basis for revocation. Can we do that? I believe, Your Honor, you can. You can order that the DA take action consistent with your ruling. If you found that the DEA misinterpreted and applied the law, then there would be no basis left in the record to support the revocation.  They would have to take action consistent with your ruling. I know I'm running short. I would like to address, if you look at the standard that the DEA has promulgated, here's what it is. It says, this is kind of page 8041. The agency credits Dr. Graham's formulation of the standard of care regarding the resolution of red flags and finds that if a pharmacist identifies a red flag when presented with a prescription, the Louisiana standard of care requires a pharmacist, one, to speak to the provider or patient to obtain more information about whether the prescription was issued for a legitimate medical purpose, and two, to document the resolution of the red flag on the hard copy prescription in the pharmacy computer system or in a log book prior to dispensing. But then if you also look at the decision in order at page 8040 in footnote 10, it says, we note the DEA relied on the expert's attestment of that quote, suggests that the corresponding responsibility imposes more expansive prescription requirements on the pharmacist than Louisiana law, which would be 515A. So they acknowledge that what they espouse to be the standard is even more expansive than what Louisiana law addresses. If you look at Louisiana law, the general statute doesn't trump the specific statute. The specific statute is 515A. It doesn't require documentation. And I would challenge the DEA to tell you where in the Louisiana regulations that there is a requirement that they, one, speak to the prescriber or patient to obtain more information, and two, to document it in a log book on the prescription or in a computer system prior to dispensing. There is no such requirement. I'm sorry to go back to my other question. But can you get the certificate from Louisiana if the revocation has been vacated? Is it Louisiana or is that something that... That's the DEA, Your Honor. The DEA has to do that part? Newman's Pharmacy, the only adverse action they've suffered at this point has been the revocation at the federal level, yes, Your Honor. Okay, so it just would be the revocation, that would be vacated as part of the vacature of the determination? Yes, Your Honor. Is that what you're saying? I believe that's correct. Okay. Okay. Thank you. You saved time for rebuttal, sir. I did. Thank you, Your Honor. Ms. Gay? Thank you, Judge Elrod. Good morning and may it please the Court. Anita Gay on behalf of the Drug Enforcement Administration. The DEA properly revoked Newman's Pharmacy's certificate of registration to dispense controlled substances after Laura Newman, the owner and pharmacist-in-chief, dispensed controlled substances outside the usual course of professional practice and beneath the Louisiana standard of care. 1306.04a has the work knowing. In their brief, you'll see that petitioner repeatedly tried to impose the criminal standard, relying on criminal cases citing to ruin and con and the standard that was set forth there for prosecutions under 841. That is not at issue here. And it is just a confusing argument in their brief when they suggest that somehow there has to be knowing and intentional consistent with that required in a criminal case. And that is not what ruin and con said. That is not what happens in a regulatory proceeding. So are you saying the DEA did not revise the regulation to require knowledge in 1971? Well, they did require knowledge. But in a regulatory proceeding and in this proceeding, they acted accordingly. Both sides did. The definition of knowledge under 1306.04a is an objective standard. And that objective standard is established by the presentation of expert testimony, which the government and Newman's both presented here. And the administrative law judge who heard the testimony found that Dr. Graham's expert for the government was consistent. She talked about the red flags that are enumerated in the Louisiana Code. She addressed the DEA decisions that discuss red flags. There are numerous circuit court decisions addressing red flags. Red flags are certainly a well-known term, and it is standard practice for pharmacists to address them, to identify them, address them, resolve them, and document. And Dr. Graham was consistent on that, that they do need to be documented so that subsequent pharmacists will know what had happened. And also so there will be a record to show that this was addressed. So other than the experts saying that this is required, this is not required by Louisiana or in the regulation, is it, specifically? That they be documented? Well, both experts agreed they should be documented. At the very beginning of Laura Newman's testimony, she led off by saying that she acknowledged that they should have been documented. So it is baffling for her now in this petition to claim that she did not have an obligation to document. She testified. One of the problems with her expert, with Dr. Akers, was that Dr. Akers was inconsistent about the documentation requirement. Sometimes Dr. Akers said, you do not need to document. For instance, in the patient files for patient C.E., she said, well, I just looked at the entire file and that was sufficient documentation. But then later, under questions from the Administrative Law Judge, Dr. Akers specifically said that, yes, you have to document them. Going to Laura Newman's testimony on page 395 of the transcript, one of the very first questions that she was asked was whether she takes responsibility for failing to document. These are standards of care, right? Yes. They're not regulations. They're not federal regulations that you have to document. Correct. Correct. And that is what is the objective standard. Not best practice. What did she do that violated any federal law or federal regulation? Okay, so what she did was, she was presented, first of all, there's an obligation for a person's prescription in the usual course of professional practice and for legitimate benefits. The corresponding responsibility of the pharmacist is to identify red flags and to also make sure that any dispensing is done in the usual course of professional practice. She ran down every red flag according to her. According to her. And there was no violation of any regulation. Is it true that the only breach here is failure to document how she tracked down the red flags? Absolutely not. Okay. What else is there?  Well, first of all, let's talk about what the red flags were. There were drug duplications and then there were also dangerous combinations. Of the three patients, CE was given a benzodiazepine and an opioid, which both depressed the respiratory system. There's no indication that she addressed this with him and there was evidence in the record that he was in between specialists when he went to Lorna and his father to have these prescriptions filled. So, she did not have, the practitioner in this instance, her father did not have a long history of prescribing to CE. And those are dangerous combinations. Okay, but it was prescribed by a physician. Is that correct? Yes, but again, the pharmacist does not have an obligation to prove that it was a legitimate prescription. The pharmacist... Well, did the DEA prove that it was not a legitimate prescription? Yes, they proved that there was no documentation resolving... No, did they prove it was an invalid prescription? They proved that it had red flags that were not resolved. So, that would make it an illegitimate prescription or an illegitimate dispensing. That is what they established, both for CE and for JHR, who also received Vicodin and Xanax. CE received Vicodin and Klonopin and SW had Valium and Butalbital, which is a sedative, in multiple doses. What makes those red flags evidence of knowledge? Not just negligence, but knowledge. The expert testimony, identifying these as red flags and saying, this is the standard of care. And both experts testified to the standard of care in Louisiana and testified that the federal standards, the federal regulations, the prior federal decisions, the federal statutes, they inform the state standard of care. But specifically in the Louisiana statute, it does enumerate red flags in 515. And then, if you look in our appendix at Addendum 7, under Section 1123, it does talk about oral prescriptions, which I believe that some of the prescriptions from CE were called over or from SW were called over from her father to the pharmacy. And it sets forth requirements for record keeping and for documentation that they have to use an electronic imaging system. Well, let's back up. To have knowledge, you have to know that there was something wrong with the prescription. That is not correct. There is no requirement for the pharmacist to know that it was not legitimate or that the government has to prove that it was not legitimate. We have to show that the pharmacist should have seen that there were questions raised, then address those questions, resolve those questions, and document it. Where does it say that? What you just said, where is that in the regulation or law? In the cases that have been reviewed by other circuit courts and also in numerous DEA decisions addressing pharmacies and pharmacist action. In Suntree out of the 11th Circuit, the very same issue was presented there where the pharmacist said, well, I didn't have an obligation to document. And they presented expert testimony. What was it? Let's back up. Did she, in fact, run to ground questions about these particular instances? She did not have any records to show that. Forget the records part. Was there evidence that she actually inquired and satisfied herself that this was okay? From her testimony is the only basis for that. And was there any underlying documentation of their conditions or anything else that supported her testimony? There was testimony from her expert and from the government's expert about some of the conditions that the controlled substances are issued for. Tension headaches or for surgery pain. So again, at the bottom, you're saying the only problem here is failure to document. Not that she didn't inquire at all, but failure to document. Is that right or wrong? That is part of what she did that was wrong. And then she did not have a system set up to confirm these. And then you also have her own prescriptions. She had the ones that she filled. And during cross-examination with the government's expert, her attorney brought out that she had actually filled prescriptions like that from her father over 80 times. So we're not talking about isolated instances. And then her own expert said, despite them arguing that this was a new law that was enacted in 2015, her own expert said the law prohibiting prescribing controlled substances to immediate family members has been in place for a while. What is most interesting is that... Was it 80 times after the law changed or 80 times over a course of time before that? We did not have the prescriptions that were filled by S&B Pharmacy, but given the rate of her prescribing, she was on this treatment for a long time. So it could be before. And it's a different pharmacy altogether. Some could be before, but definitely some were after. Can you... I don't know if you've answered Judge Richmond's question. You were just talking about some case from the 11th Circuit that you said says that you must document. If you don't document and research, then you have violated the law. You said it was called Sun something. And I'm looking in your table of authorities, and I see three 11th Circuit cases, I believe, at least two here. But I don't see that case. So is this the main case that you want us to rely on? And is it in your brief? And maybe it's called something else, and it's known by nomenclature or something. This is not my practice area. No, Your Honor. Jones Total is another case from the 11th Circuit. Okay, but you didn't cite the case you were just citing, did you? Jones Total does... My recollection is it does cite to Suntree. But I was looking at 11th Circuit published decisions to discuss with the court. So you would say that Jones Total Health from the 11th Circuit establishes the proposition that if you fail to provide documentation, you violated the regulation and the law? You have violated the standard of care for pharmacists, which is what leads to... And it's not a knowing failed to document. It's just a failed to document. Well, there has to be knowing, but it's not knowing rising to the level of a knowing and specific intent akin to the mens re in a criminal case. Where do you get that proposition? Well, if you listen to the RUIN... First of all, the RUIN decision. I've been calling it RUIN, but after listening to the argument and hearing how the court interpreted it, I'm trying to say it correctly. But in RUIN, the court did not find that they were extending the knowing and intentional standard of prosecutions under Section 21 U.S.C. 841 to civil penalty cases under the Critical Cases Act or administrative proceedings. But I would also refer the court to the civil... So you're saying RUIN says that knowing doesn't require actually knowing? Is that what you're saying? I'm saying that RUIN only addresses the knowing standard and the sufficiency of the evidence and the jury instruction for a criminal prosecution. What case establishes the proposition that says that they're different and that as a civil matter, you don't have a knowing requirement for standard of care violations? Well, at minute nine of the oral argument in RUIN, the attorney for RUIN discussed with Chief Justice Roberts, and I can provide the court with a transcript as an addendum after this argument, but in the argument, the attorney for RUIN said, we are not saying this applies to regulatory matters. And they discussed an analogy of a speeding ticket and whether if one is speeding but you didn't know or you thought or intended that the speed limit should be 80 in Montana, but it's 55, is that still a speeding violation? And yes, his attorney conceded and Justice Roberts agreed. They were not discussing expanding the knowing. Okay, we're not talking about expanding. Assuming that the law is, the DEA's reading of the law, is that you don't have to have a knowing, you don't have to establish that you have specific knowledge of the violation of standard of care. That needs to be set forth somewhere. Where is that set forth in a regulation or a law or even in a case that says you don't need to, that the DEA does not need to establish that in a civil penalty context? Where is that? I'm sorry, I have not, the fact that somebody in an argument said something and Chief Justice Roberts agreed, to me, does not establish the proposition that what is the standard by which the DEA is deciding this in the civil context of whether or not you have to have a knowing violation of standard of care. I'm sorry, can you give a case or a statute or a regulation or anything? Yes, and I would point you to 1306.04A. Okay. And the cases interpreting that, I believe one of the names of the ones cited. 1306.04A establishes that you don't have to have, doesn't have to be knowing? No, it establishes that it has to be knowing, but then the cases interpreting that and applying that say that the proof of knowing is presented through expert testimony about the standard of care for the physician or the pharmacist in whatever state that the pharmacist is located or the physician is practicing. So, it does have to know? So, you do have to know that you're violating the standard of care? You have to know that you have a corresponding responsibility and you have to know what the standard of care is. Does the agency have to bear the burden of proof to establish that the violator bore the knowing that they knew?  The agency had to establish by a preponderance of the evidence, which they did, that when confronted with the facts of these prescriptions that Laura Newman reasonably would have known and should have known that there were issues that needed to be addressed, resolved, and documented. And there's where I want to get really specific. Newman should have known there were issues and failed to document. Where did y'all show she knew and should have known issues and did not investigate? In her testimony, she acknowledged that there were red flags, but she brings in ad hoc explanations of how she resolved them. And that is it, which is insufficient because they must be documented. Is there a single instance where she didn't investigate? Again, it's her self-serving testimony. Is there any evidence she didn't investigate any of these, even by her own testimony? You may not believe it, but is there any evidence she didn't investigate? And the ALJ did not believe it. The ALJ who made the credibility determination found that she was not believable and the expert was afforded limited credibility because of inconsistent statements in there. And going to the, Your Honor, you had asked, Judge Elrod, you had asked about the authority for vacature and they have not presented any authority of why this could be vacated, that it would be remanded without prior decisions. Well, vacated and remanded. Right. But in their brief, they're asking that it just be vacated and the registration be reinstated and there is no authority for that. And they have not cited a case and there is not a case that would justify that. But I also want to discuss briefly the Loper-Bright issue that they brought up. Because this court has recently addressed that and in a recent decision in this court, Loper-Bright talks about if there's an ambiguous statute that an agency is interpreting, then they're not entitled to the deference. That it's for the courts to determine. That is not the issue here. We do not have any ambiguous statute. We have courts that have interpreted 1306.04 and have applied it to physicians and to pharmacists and the requirement to resolve red flags. There are a number of cases cited in the brief. And in a prior decision from this court, Judge Elrod, you were on the panel in the unpublished decision in Michael White. Michael White, excuse me, was a physician who did not issue legitimate medical prescriptions in the usual course of professional practice. And this court... A pill mill or something? He was giving weight loss drugs to me without conducting evaluations. Not exactly a pill mill, but there were many parallels to what he raised before the agency to what he also presented to this court. His acceptance of responsibility, his acknowledgment of wrongdoing. It was very similar to what Laura Newman did here. In that he had excuses he minimized. When she first testified, she said, I didn't know about the law prohibiting prescribing to me by my father until January 2022 when the diversion investigator showed up. Then she testified that... Well, now before this court, they're saying, well, that law doesn't even apply. It's just an ethical rule for doctors. Yet in her parallel criminal prosecution in the Western District of Louisiana, she was indicted for... Can we consider that at all? Is that part of this record? It is not part of the record. But what I brought to the court's attention is to show that depending on the forum, where Laura Newman is, she says what is most opportunistic... I don't know, though, that we can consider that at all, though. Can we? How is that appropriate for us to consider something that's not before us in this record? Are we limited by the record that was with the DEA? In the record, on the cross-examination of the government's expert, her attorney brought out that the expert had been retained in the criminal matter, and there was a discussion about that. So there was a reference to the criminal matter. Was there a reference to the thing you're raising right now in oral argument, though? No, but I could supplement the record with her deferred prosecution agreement, where she acknowledged... I'm just saying, I'm not sure we can go outside the record of the regulatory proceeding. When there is a process and you have somebody like Laura Newman who doesn't respect any of the process, she goes to the DEA and says what she thinks she needs to say to keep her registration. Then she comes here and she says, oh, yeah, I didn't... In the hearing, I said I didn't know about it. But here I'm saying it doesn't apply. But in the Western District, I say they could prove beyond a reasonable doubt. Was the Western District any part of that in front of the ALJ? Other than the ALJ appeared to observe the proceedings, he did not participate in that. But there were... Was there a reference in front of the ALJ that she took an inconsistent position in the criminal proceeding? No, because she did not enter the deferred prosecution agreement until after she had been indicted. But look at what she's done here in her brief to now say that doesn't apply to me. Why isn't that not inconsistent? Just separate and apart from the Western District situation, you can say something doesn't apply to me. It's an ethical rule. And also, I didn't know that it would apply. You could say both things simultaneously as a legal matter. I don't think it technically applies. And also, I didn't know about it beforehand. Those are not inconsistent. Except what she did say in the hearing is inconsistent with what she argued in her brief, which is, I didn't know about it. I learned about it. I then complied. I went to a different practitioner to obtain my prescriptions. And I will not do it again. How is that inconsistent with saying I don't actually legally think you're correct? That's totally legitimate to argue on appeal that I don't even think that's legally correct. But I'm still going to tell you that I'm going to comply with it in the meantime while that's being sorted out. And both experts said that this was improper and it did apply to her. Okay, but her lawyer still can say, I don't think it does. And then perhaps we'll opine on it. Perhaps the Supreme Court will opine on it. But you can say I don't think it applies even if the experts say it does. And again, that was not raised before the hearing. Just like the lack of knowledge was never raised before the hearing. It was not challenged. Do you have anything further? Because I don't want to argue with you. I want you to present your argument. Yes. If she had challenged the knowledge issue, if she had brought up the Rwan-Khan issue in the hearing, it would have given the opportunity for the government attorney to cross-examine her. It would have given the opportunity for the ALJ to address it, for the administrator. And she never did that. What knowledge issue? I'm sorry, I'm confused. What knowledge issue at the hearing was not raised specifically? She did not claim, as they had done in their brief, that Rwan and Khan apply and that there's an elevated standard to show that she was a drug pusher or that she knowingly and intentionally dispensed these. And that is not the standard for an administrative proceeding. The administrative proceeding is to show with the prominence of the evidence that she has not met the standard of care, which both experts acknowledged on the prescriptions from her father did not meet the standard of care in Louisiana or under the federal regulations and codes of the CSA. So, thank you and move request. Thank you very much. We appreciate your argument this day. Mr. Dubose, you've saved time for rebuttal. Thank you. First, the knowledge requirement in 1306.04a, knowingly that term has never been interpreted one way for one statute, another way for another statute. And more importantly, if you look at the sanction for violating 1306.04a, is that it subjects the violator to all the laws relating to violations of controlled substances, which are both civil and criminal. So, the knowingly requirement has never been interpreted any differently. They say that just the standard of care applies and that for civil violation, all you have to do is be found in violation of the standard of care and that's a violation. Do you have anything to the contrary? They've enacted sui sponte outside of their regulatory authority without proper rulemaking. But if you look at their prior cases, if you look at Superior Pharmacy, we cite, it says, all red flags do not have the same cue. Proof that a pharmacist dispensed a controlled substance prescription without resolving the red flag, which only created a reasonable suspicion that the prescription lacked a legitimate medical purpose, is not enough to establish that a pharmacist acted with the requisite intent. Is that in a civil case? That's in the Federal Register. It's an AOJ proceeding, it's 81. Is that a civil proceeding? Oh, I'm sorry, it's a regulatory proceeding. Yes, Your Honor, it's a civil proceeding. It's a DEA revocation proceeding case, just like Trinity II was. And so, if you look also, Your Honor, at their position in the decision, it says that Dr. Graham, the expert for the government, her testimony was consistent with the long-standing principle that documentation is a, quote, critical step in resolving red flags. And then, that's at page 8041. At 8045, they said that the failure to resolve and document blatant red flags for drug abuse are core failures and violate bedrock principles of the CSA and the Louisiana standard of care. That is not the case. What the DEA, when the DEA has required documentation, we cited three examples in our brief, I think it's 06.05, 0.12, and I believe 0.47, but they're in our brief, they have enunciated exactly what triggers the documentation requirement. They have enunciated exactly what documentation is required. But in this case, the government argues, well, we've published all this in the federal register, as if the ALJ decisions rise to the level of regulation. If these are critical steps, core principles, bedrock foundations, then it's incumbent on the DEA to go through the rulemaking process to identify what are red flags. Because if you know what their expert says, it's any little thing, any little thing that creates some suspicion. They can't even articulate what it is, much less what's required. And to this point, if you look at Coconut Grove, which is a DEA revocation case, in Coconut Grove, the pharmacist wrote, this is a quote from page 8048 of our decision, the pharmacy expert in Coconut Grove argued that the pharmacist in charge had resolved the red flags over time in continuing conversations with the patients and doctors. But the agency rejected these arguments because the pharmacist's only notation on the prescription was, quote, verified. Well, that would, to me, create the reasonable inference that the pharmacist's saying, I did the diligence, and I verified it's a legitimate prescription. But what did the DEA do? They said, which was not sufficient. So it's kind of like, we can't tell you what it is, but we'll tell you when you didn't meet it. So, if it is such a core principle, a bedrock principle, it's not a negligence standard, it's not a knew or should have known, they've always interpreted knowing and knowingly the same way that this court has always interpreted knowing and knowingly. Does Jones, in the 11th Circuit, add to this discussion in any way? I don't believe it does, Your Honor, and to the extent that it says, and I have to go back and look at the case, I would say this court is not bound by Jones. This would not be the first time this court disagreed with a sister circuit when you look at the regulations and interpret them. Are we bound by any of those regulatory opinions? No, Your Honor, you are not. But they do show that the DEA has shifted its position, and to go back and look at what they said about the usual course, they said on page number one, excuse me, they said that if you don't document in the red flag, then you have ipso facto acted outside the usual course of professional practice, which Ruan says, and Collier from this court says, and Moore says, you're acting akin to a drug pusher. So the DEA has taken the position that if you act outside, if you don't resolve and document, it's ipso facto a violation. Back to O4A really quick. Yes, sir. So in your view, what is the regulation's actual textual requirement? That the pharmacist issue a prescription that she knows is invalid, not a legitimate prescription, or that she knows was issued by a practitioner acting outside of the usual course of professional practice. Your Honor, frankly, it cannot be read any other way. It is crystal clear what is required. The actus reus issuing an invalid prescription, the mens rea is knowingly doing so. And I see that I'm out of time. Are there any further questions? Thank you. We have your argument. We appreciate the arguments on both sides today. Thank you. Thank you very much, Your Honor.